[No. 6599-1.   Division One.   July 23, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES MICHAEL BIUS, *Appellant.*

808

*Sinsheimer, Meltzer & Gelbart* and *Ronald J. Meltzer,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jose Gaitan, Deputy,* for respondent.

SWANSON, A.C.J.—Charles Michael Bius appeals his conviction of second–degree murder. Bius was the only eyewitness to the events leading to the death of Wallace Carmichael. His version of the facts is as follows: The two previously unacquainted men met in a bar, and Carmichael invited Bius to his house. They drank heavily for some time, and Carmichael eventually made homosexual advances toward Bius. Bius rejected these advances, and Carmichael approached Bius with a knife. Bius took the knife from Carmichael, Carmichael hit Bius twice with his fist, and Bius "felt the knife go in" to Carmichael. Bius denied deliberately stabbing Carmichael, and stated that Carmichael "must have run into the knife."

The State offered into evidence a piece of linoleum tile taken from the bedroom floor of Carmichael's house. An

expert testified that the tile appeared to have a blood stain on it with a pattern matching that on the sole of sandals found at the scene of the crime. The sandals fit Bius. On cross–examination, the expert was questioned as to whether the stain on the tile was blood or some other substance. Bius' testimony, on direct examination by defense counsel, indicated that he may not have entered the bedroom after the stabbing. In rebuttal, the State was allowed to introduce evidence that the stain on the tile was blood. The State also introduced rebuttal testimony of three witnesses that Carmichael was a quiet and peaceful person.

Bius first contends that the instructions given by the court on the issue of self–defense were improper because they eliminated from the jury's consideration the question of whether his reasonable belief that he was in danger might validly be a mistaken belief.

The court instructed the jury that:

> The kind and degree of force which a person may use lawfully in self–defense is limited by what a reasonable person in the same situation as such person, seeing what he sees and knowing what he knows, then would believe to be necessary. Any use of force beyond that is excessive. A person is not entitled to use all the force which he believes to be necessary to repel an attack; he may use that degree of force necessary to protect himself which a reasonably prudent man would have used under the conditions honestly appearing to the defender at the time of the incident.

Instruction No. 28. Bius' requested self–defense instructions read as follows:

> A person acts in self–defense whenever he reasonably believes himself to be in danger of being injured and the force used to resist the attack appeared at the time and under the circumstances reasonably necessary to prevent injury to his person.

Defendant's requested instruction No. 2.

> In determining whether the defendant reasonably believed himself to be in danger of injury, you should consider the facts and circumstances as they appeared to the defendant at the time, not as they might now appear.

If the defendant reasonably but mistakenly believed himself to be in danger of injury, he had a right to defend himself against that injury by the use of reasonable force, even though he was not truly in such danger.

Defendant's proposed instruction No. 3. Bius contends it was error to refuse to give the second paragraph of his proposed instruction No. 3.

■ Instructions are sufficient where they correctly state the law and allow counsel to argue their theories of the case. *State v. Wanrow,* 88 Wn.2d 221, 236–37, 559 P.2d 548 (1977). The first sentences of the court's instruction have been expressly approved as correctly stating the amount of force which may be used in self–defense. *State v. Dunning,* 8 Wn. App. 340, 342, 506 P.2d 321 (1973). The last sentence of the instruction is also a proper statement of the law. *Dunning* at 342. The addition of the word "honestly" to the law as stated in *Dunning* does not change the meaning of the rule, and the trial court did not abuse its discretion in wording instructions. *State v. Biggs,* 16 Wn. App. 221, 225–26, 556 P.2d 247 (1976). Finally, under the instruction given, counsel was free to argue that Bius' reasonable belief that he was in danger could properly be a mistaken belief. The instruction given was proper, and it was not error to refuse to give the requested instructions.

Bius next contends that the State's introduction of evidence of the scientific analysis of stains found on linoleum taken from the bedroom was improper, as it was merely cumulative and was not in rebuttal of any new matter presented by the defense.

■ In *State v. White,* 74 Wn.2d 386, 394–95, 444 P.2d 661 (1968), the court explained the nature of rebuttal evidence:

Rebuttal evidence is admitted to enable the plaintiff to answer new matter presented by the defense. . . . Genuine rebuttal evidence is not simply a reiteration of evidence in chief but consists of evidence offered in reply to new matters. The plaintiff, therefore, is not allowed to withhold substantial evidence supporting any of the issues which it has the burden of proving in its case in

chief merely in order to present this evidence cumulatively at the end of defendant's case. Ascertaining whether the rebuttal evidence is in reply to new matters established by the defense, however, is a difficult matter at times. Frequently true rebuttal evidence will, in some degree, overlap or coalesce with the evidence in chief. Therefore, the question of admissibility of evidence on rebuttal rests largely on the trial court's discretion, and error in denying or allowing it can be predicated only upon a manifest abuse of that discretion.

(Citations omitted.)

In presenting his defense, Bius' testimony indicated that he may not have entered the bedroom after the stabbing. The State then offered to introduce evidence that the substance tracked into the bedroom by a person wearing sandals which fit Bius was in fact blood. We believe this is one of those difficult areas noted by the court in *White* where the evidence in chief and rebuttal evidence may have overlapped to some extent. In such a situation we defer to the trial court, as we find no manifest abuse of discretion.

■ Bius' final contention is that the trial court erred in admitting rebuttal testimony as to Carmichael's peaceful and quiet nature because the defense had not put Carmichael's character as a violent and quarrelsome person in issue. The general rule is that:

The character of the deceased is presumed to have been quiet and peaceable, and until it is attacked by the defense it may not be made the subject of proof by the prosecution. Where, however, the state (*sic*) makes an attack on the deceased's character, the prosecution in rebuttal may show that it was quiet and peaceable." 13 R. C. L. 916–917.

*State v. Stone*, 169 Wash. 233, 241, 13 P.2d 427 (1932). There is some disagreement among the courts which have considered the question as to what constitutes an attack on the deceased's character as a peaceful and quiet person. Some courts hold that the fact that the deceased allegedly attacked the defendant, without more, is insufficient to allow rebuttal evidence of the deceased's peaceful nature. Rather, the defendant must introduce some evidence of the

deceased's reputation for violence. *See* C. McCormick, *Law of Evidence* § 193, at 461–62 (2d ed. E. Cleary 1972). Wigmore and other courts state that whenever the defendant offers evidence that the deceased was the first aggressor, the State, in rebuttal, may show the peaceful character of the deceased. *See* McCormick, *supra;* 1 J. Wigmore, *Evidence* § 63, at 471 (3d ed. 1940); and Annot. 34 A.L.R.2d 451, §§ 12 and 13 (1954).

We believe that, under the facts of this case, Bius' testimony that Carmichael was the first aggressor and that Carmichael violently attacked him after he rebuffed Carmichael's homosexual advances was a sufficient assault on Carmichael's character to allow the State to present rebuttal testimony that Carmichael was not violent and aggressive, but had a peaceful, nonviolent reputation. *See State v. McFerran,* 80 N.M. 622, 459 P.2d 148, 156 (1969); *Sweazy v. State,* 210 Ind. 674, 1 N.E.2d 992, 5 N.E.2d 511 (1937); *Commonwealth v. Castellana,* 277 Pa. 117, 121 A. 50 (1923); *State v. Holbrook,* 98 Ore. 43, 188 P. 947, 192 P. 640, 193 P. 434 (1920). Although the Washington Rules of Evidence were not in effect as of the time of this case, our holding is consistent with ER 404 which states in part:

> **(a) Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> . . .
>
> (2) *Character of Victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, *or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;*

(Italics ours.) 91 Wn.2d 1132 (1979).

Affirmed.

JAMES and DORE, JJ., concur.

Reconsideration denied August 29, 1979.

Review denied by Supreme Court November 30, 1979.